HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEDAR GROVE COMPOSTING, INCORPORATED,<br><br>  Plaintiff,<br><br>  v.<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>  Defendant. | CASE NO. C14-1443RAJ<br><br>ORDER |

## I. INTRODUCTION

This matter comes before the court on Defendant's motion to dismiss, Plaintiff's motion to file supplemental briefing, and Plaintiff's motion invoking the "first-to-file rule." Defendant requested oral argument as to its motion to dismiss; no party requested oral argument as to any other motion. The court finds oral argument unnecessary. For the reasons stated below, the court DENIES the motion to dismiss (Dkt. # 11), directs the clerk to TERMINATE the motion for supplemental briefing (Dkt. # 27) because it is moot, and GRANTS Plaintiff's motion invoking the first-to-file rule (Dkt. # 35) by ruling that this suit, not the suit between these parties currently pending in the Southern District of New York, is the first-filed action. No later than June 12, 2015, Plaintiff shall file an amended complaint in accordance with this order. After Defendant has reviewed that amended complaint, and no later than June 25, 2015, the parties shall meet and confer and file a joint statement as to the status of the New York action.

ORDER – 1

## II.  DISCUSSION

Plaintiff Cedar Grove Composting Incorporated operates two organic waste composting facilities in Western Washington.  It was named as a defendant four times in 2013 in suits claiming various injuries as a result of odors emanating from those facilities.  Cedar Grove turned to its insurer, Defendant Ironshore Specialty Insurance Company.  It has not been happy with the results.  In its complaint, it contends that Ironshore defended it only after reserving its right to deny coverage on an improper basis, that Ironshore forced it to expend hundreds of thousands of dollars to fund its own defense, and that Ironshore improperly interfered in the defense of the lawsuits.

Because the court considers Cedar Grove's allegations of wrongdoing on Ironshore's motion to dismiss, it must accept the allegations of Cedar Grove's complaint as true and ignore evidence or assertions to the contrary.  That mandate is fatal to Ironshore's motion to dismiss, a conclusion that the court will explain in more detail later in this order.  For now, the court summarily rules that Cedar Grove's complaint is adequate to state claims against Ironshore for breach of an insurance policy it issued to Cedar Grove, and for bad faith and a variety of other extra-contractual causes of action, including violations of Washington's Consumer Protection Act ("CPA") and Insurance Fair Conduct Act ("IFCA").

### A.   The First-to-File Rule Applies Here; This Lawsuit, Not the Suit Ironshore Filed in New York, is the First-Filed Action.

Less remarkable than Ironshore's motion to dismiss is the parties' litigation conduct since Ironshore filed that motion.  One of Ironshore's principal assertions in that motion was that there was no live controversy over the policy Cedar Grove identified in the complaint because Ironshore had made payments exhausting that policy's $2 million limit.  Among Cedar Grove's responses to the motion to dismiss was that the $2 million limit applied only to the primary insurance policy, and that an excess insurance policy from Ironshore provided up to $10 million in additional coverage.

ORDER – 2

1    Ironshore, although it was unquestionably aware of the excess policy it had issued, did not mention that policy in its motion to dismiss.  In its reply brief, it explained that it believed it had no obligation to mention the excess policy because Cedar Grove had not identified that policy in its complaint.  Moreover, Ironshore announced in that reply brief that it had filed a separate lawsuit regarding its obligations under the excess policy.

Ironshore filed its new lawsuit in the Supreme Court of New York on January 9, 2015, after it filed its motion to dismiss here, but before Cedar Grove opposed it.  Cedar Grove has since removed that suit to the United States District Court for the Southern District of New York.

The New York action overlaps substantially with this one.  That is no surprise, because the Ironshore excess policy defines its coverage largely by reference to the Ironshore primary policy.  The New York complaint requests that the court declare that five clauses *from the primary policy* operate to bar or exclude coverage under the excess policy.  That too, is no surprise, because Ironshore has taken the position, at least since its February 2013 reservation of rights letter, that it may deny coverage under both the excess and primary policies because of coverage definitions and exclusions contained solely in the primary policy.

Cedar Grove did not know that Ironshore had filed the New York action until after it opposed the motion to dismiss.  It then filed a motion to supplement its briefing on the motion to dismiss to address the New York action.  It then mooted that motion by filing a motion requesting that the court apply the "first-to-file rule" and deem this action, not the New York action, to be the first-filed suit for purposes of that rule.

The court is at a loss to understand the choices that have put the parties in this situation: a suit pending here regarding the primary policy and a suit pending in New York regarding the excess policy.  Those choices began with Cedar Grove's decision to exclude the excess policy from the complaint in this action.  That exclusion appears

ORDER – 3

deliberate.  Cedar Grove named only the primary policy, did not assert the existence of the excess policy, and left no outsider with any basis to conclude that there was more than one policy in controversy.  Cedar Grove says that its complaint "did not specifically refer to the secondary layer of coverage provided by Ironshore because it was not clear whether Ironshore had or would pay monies sufficient to exhaust the primary layer at the time Cedar Grove filed the complaint on August 20, 2014."  Pltf.'s Opp'n (Dkt. # 20) at 10 n.5.  That explanation is unpersuasive.  In a letter sent, perhaps coincidentally, on the same day that Cedar Grove sued, Ironshore agreed to make payments bringing its total expenditures on Cedar Grove's defense to more than $2.6 million.  Duluc Decl. (Dkt. # 25), Ex. B.  Even if Cedar Grove was unaware of that agreement before suing, it certainly knew that it was asking for reimbursements that exceeded the limits of the primary policy.  In other words, it knew that the excess policy was at least potentially at issue, and said nothing at all about it in its complaint.

     Ironshore's conduct is no easier to understand.  Like Cedar Grove, it knew that the excess policy was at issue, and yet filed a motion to dismiss in which it claimed that the dispute between the parties was moot because it had exhausted the limits of the primary policy.  It did so without mentioning the excess policy or Ironshore's plan to sue over that policy in New York.  When Cedar Grove received the motion to dismiss, it had 21 days in which it could have amended its complaint, without seeking leave of court, to add claims involving the excess policy.  Fed. R. Civ. P. 15(a)(1)(B).  But it did not, instead informing the court in opposition to the motion to dismiss that it was "more than willing to amend its Complaint" to "the extent that the Court deems it prudent . . . ."  Pltf.'s Opp'n (Dkt. # 20) at 10 n.5.  Why did Cedar Grove itself not deem an amendment prudent?  And why, in the more than six months since Cedar Grove discovered that Ironshore took the position that the excess policy was not at issue in this lawsuit, has Cedar Grove taken no step to amend its complaint?

ORDER – 4

The final explanation for the predicament before the court is Ironshore's reliance on two clauses that appear only in the excess policy:

> In the event that the insured and we have any dispute concerning or relating to this policy, including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that any such litigation shall take place in the appropriate federal or state court located in New York, New York . . . .
>
> . . .
>
> In the event that the insured and we have any dispute concerning or relating to this policy including its formation, coverage provided hereunder, or the meaning, interpretation or operation of any term, condition, definition or provision of this policy resulting in litigation, arbitration or other form of dispute resolution, the insured agrees with us that the internal laws of the State of New York shall apply without giving effect to any conflicts or choice of law principles.

Ironshore relies on these clauses not only to explain its choice to file the New York action, but also as a possible explanation for Cedar Grove's apparently deliberate choice not to mention the excess policy in its complaint. Even if the forum-selection clause is valid,[1] no one explains why anyone would prefer the situation the parties have created for themselves: one suit in Washington and one in New York. Even if the choice-of-law clause is valid, *see* n.1 *supra*, Ironshore does not explain why it was necessary to sue in New York to enforce it. Ironshore could have filed the claims at issue in the New York

---

[1] Washington has, by statute, declared that no "insurance contract delivered or issued for delivery in this state and covering subjects located . . . in this state" shall "depriv[e] the courts of this state of the jurisdiction of action against the insurer . . . ." RCW 48.18.200(1)(b). The same statute bars any clause "requiring [an insurance policy] to be construed according to the laws of any other state or country" except in circumstances not relevant here. RCW 48.18.200(1)(a). The statute declares clauses that violate it to be void. RCW 48.18.200(2). The court need not decide, at this time, what impact this statute has on the excess policy. It notes, however, that the Washington Supreme Court has declared that RCW 48.18.200(1)(b) "demonstrates the legislature's intent to protect the right of policyholders to bring an original 'action against the insurer' in the courts of this state." *Dep't of Transp. v. James River Ins. Co.*, 292 P.3d 118, 123 (Wash. 2013) (holding that binding arbitration agreements in insurance policies are void). Ironshore has not seriously confronted either the statute or the Washington Supreme Court's interpretation of it. Its contention that *Atl. Marine Constr. Co. v. United States Dist. Court*, 134 S. Ct. 568 (2013) prohibits states from invalidating some forum selection clauses finds no support anywhere in that decision.

ORDER – 5

action (largely claims for declaratory judgment as to its obligations under the excess policy) as counterclaims in this lawsuit.  On the record before the court, the most likely explanation for Ironshore's choice to file a second lawsuit is that it was either forum-shopping or filing a second suit in a second forum solely the purpose of increasing the burden on its insured.

The first-to-file rule saves the court from having to answer most of the questions that the parties' conduct raises.  That rule applies when two complaints involving the same parties and issues are filed in two federal district courts.  *Alltrade, Inc. v. Uniweld Products, Inc.*, 946 F.2d 622, 625 (9th Cir. 1991).  It is a discretionary doctrine, one that permits the court overseeing the second-filed complaint to decline jurisdiction or the court overseeing the first-filed complaint to enjoin the later-filed action.  *Id.*; *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986).

The two lawsuits are undisputedly between the same parties, the only possible dispute is whether the two suits involve the same issues.  That is not much of a dispute, in the court's view.  As noted, Ironshore's suit asks the New York court to construe many (perhaps all) of the clauses *from the primary policy* that are at issue in this lawsuit.  That it does so in the context of assessing Ironshore's liability under the excess policy is not meaningful in deciding whether it makes sense to resolve these issues in two separate lawsuits.  Ironshore has invited two different courts to interpret the same clauses, thus inviting inconsistent judgments.  As the court has already stated, it will not grant Ironshore's motion to dismiss, so Ironshore cannot avoid the first-to-file rule on that basis.  The only fact weighing in Ironshore's favor is Cedar Grove's apparently deliberate exclusion of the excess policy from the complaint it originally filed and its inexplicable refusal to amend that complaint sooner.  But that is not dispositive, as "[a] number of courts have held that the filing of a complaint triggers the first-filed rule, regardless of whether the plaintiff later amends the complaint."  *Barnes & Noble, Inc. v. LSI Corp.*,

ORDER – 6

823 F. Supp. 2d 980, 987 (N.D. Cal. 2011).  The court will order Cedar Grove to file the amended complaint it should have filed long ago.

Resolving these lawsuits in two different forums is at best a waste of the parties' and the judiciary's resources; it is at worst an invitation to inconsistent rulings from two different courts.  The first-to-file rule was designed to prevent situations like these.  The court exercises its discretion to invoke it here.  The suit that Cedar Grove filed is the first-filed action.

What remains is for the court to fashion a remedy.  Cedar Grove asks only that the court rule that this suit was the first one filed.  The court has done that much.  In the alternative, it asks the court to enjoin the New York action to the extent the court deems it prudent.  In the court's view, enjoining another court is rarely the prudent option.  This is not the rare case demanding a different conclusion, especially because Cedar Grove did not affirmatively request an injunction.  Instead, the court orders as follows:

1) No later than June 12, 2015, Cedar Grove shall file an amended complaint stating its claims regarding the excess policy.

2) The parties shall ensure that the court overseeing the action in the Southern District of New York receives notice of this order.  As Cedar Grove points out, that District's "bright-line rule" is that the "court before which the first-filed action was brought determines which forum will hear the case." *MSK Ins., Ltd. v. Employers Reinsurance Corp.*, 212 F. Supp. 2d 266, 268 (S.D.N.Y. 2002) (Buchwald, J.) (internal footnote omitted); *see also Noble v. US Foods, Inc.*, No. 14-cv-7743-RA, 2014 U.S. Dist. LEXIS 162643, at *8 (S.D.N.Y. Nov. 19, 2014) (following same bright-line rule).  Citation of this order to the New York court will perhaps be sufficient to bring the New York action to a conclusion.  Regardless, this action will proceed.  If additional relief from this

ORDER – 7

court is necessary to address the New York proceeding, Cedar Grove will be responsible for requesting that relief.

3) No later than June 25, 2015, but after Ironshore has had an opportunity to review Cedar Grove's amended complaint, the parties shall file a joint statement as to the status of the New York action.

## B.     The Court Denies Ironshore's Motion to Dismiss.

What remains is to explain the court's conclusions as to Ironshore's motion to dismiss. That motion invokes Federal Rule of Civil Procedure 12(b)(6), which permits a court to dismiss a complaint for failure to state a claim. Rule 12(b)(6) requires the court to assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). The plaintiff must marshal factual allegations that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 568 (2007). If the plaintiff succeeds, the complaint avoids dismissal if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Id.* at 563; *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."). The court typically cannot consider evidence beyond the four corners of the complaint, although it may rely on a document to which the complaint refers if the document is central to the party's claims and its authenticity is not in question. *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). The court may also consider evidence subject to judicial notice. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

As noted, one of Ironshore's principal contentions is that this suit is moot because it has exhausted the primary policy by paying more than its limits to cover Cedar Grove's defense costs. The court ignores that Ironshore has provided evidence outside the

ORDER – 8

pleadings to prove its payments, which is impermissible in a Rule 12(b)(6) motion. It also ignores Cedar Grove's evidence that Ironshore has yet to make at least some of the payments it alleges it has made. Even if Ironshore had undisputedly paid the limits of the primary policy, it would not make this dispute moot. For example, Cedar Grove insists that by improperly forcing it to pay a deductible and by delaying or refusing to pay certain defense costs, Ironshore forced it to spend its own money on its defense. Ironshore cannot cure the damage arising from its delayed payments by paying defense costs much later than its policy and Washington law required. As another example, if Ironshore damaged Cedar Grove by interfering in the defense of the underlying lawsuits, its later payments do not render that claim moot. Cedar Grove's complaint plausibly alleges that Ironshore's interference caused it damage. No one should mistake this order for a ruling on the merits of the parties' coverage dispute. But, accepting as true Cedar Grove's allegations of wrongdoing (as the court must at this stage), this is not a moot lawsuit.

Also unavailing is Ironshore's insistence that it cannot understand Cedar Grove's complaint because it does not specifically identify the policy provisions it breached. That is an unconvincing assertion; Ironshore's February 2013 reservation of rights letter (which the complaint refers to and which the court deems incorporated by reference) leaves little doubt that Ironshore is fully aware of what policy provisions are at issue. But even if that were not the case, the remedy for Ironshore's alleged confusion would be, at most, an order that Cedar Grove must amend its complaint. The court has just issued that order.

Ironshore's attacks on Cedar Grove's individual causes of action and individual requests for relief do not persuade the court. Many of them depend on Ironshore's mistaken belief that payment of the primary policy limits (assuming it has made those payments) moots this suit. Others depend on feigned or actual misunderstandings that

ORDER – 9

Cedar Grove's amended complaint is likely to cure. Some do not merit individualized discussion. The exception is Ironshore's attack on Cedar Grove's IFCA claim, which the court now addresses.

**C.     Cedar Grove Has Pleaded an IFCA Claim.**

Ironshore correctly points out that this court and others have held that an insured cannot base an IFCA claim purely on a violation of Washington's insurance regulations. *E.g.*, *Seaway Props., LLC v. Fireman's Fund Ins. Co.*, 16 F. Supp. 3d 1240, 1255 (W.D. Wash. 2014) (citing cases). But Cedar Grove has also alleged the trigger for an IFCA suit—an "unreasonabl[e] deni[al] [of] a claim for coverage or payment of benefits . . . ." RCW 48.30.015(1). A refusal to pay a demand for coverage reasonably promptly is an unreasonable denial of benefits, even if only temporary. Because Cedar Grove has alleged at least that much, it has stated an IFCA claim.

Ironshore argues that Cedar Grove lacks standing to invoke IFCA because it is not a "first party claimant to a policy of insurance," as IFCA requires. RCW 48.30.015(1). IFCA's definition of first-party claimant, however, is an "individual, corporation, . . . or other legal entity asserting a right to payment as a covered person under an insurance policy . . . ." RCW 48.30.015(4). With respect to at least its demand for defense costs, Cedar Grove is a first-party claimant. At least one of this District's judges has reached a conclusion that Ironshore contends supports its position. *Cox v. Cont'l Cas. Co.*, No. C13-2288MJP, 2014 U.S. Dist. LEXIS 68081, at *15 (W.D. Wash. May 16, 2014), *declined to reconsider* at 2014 U.S. Dist. LEXIS 78457 at *5-8 (W.D. Wash. Jun. 6, 2014), *reiterated at King County v. Travelers Indem. Co.*, No. C14-1957MJP, 2015 U.S. Dist. LEXIS 53609, at *3-6 (W.D. Wash. Apr. 23, 2015). In *Cox*, the court decided that a dentist's patients could not, after his assignment of his claims against his insurer to them, invoke IFCA in a suit against the insurance company. 2014 U.S. Dist. LEXIS 68081, at *15 ("The professional liability policy [the dentist] had with [his insurer] is a third-party

ORDER – 10

policy. Thus, he was never a 'first party claimant' under the IFCA and could not assign an IFCA claim to Plaintiffs."). This court does not reach the same conclusion. IFCA gives a cause of action to a first-party claimant, it does not require that the claimant have a first-party policy. The only additional threshold limitation IFCA imposes is that the "first party claimant" "assert[] a right to payment as a covered person under an insurance policy . . . arising out of the occurrence of the contingency or loss covered by such a policy or contract." RCW 48.30.015(4). With respect to at least Cedar Grove's claim for defense costs, it is a claimant asserting a right to a payment arising out of an insured contingency—the filing of a covered lawsuit against it. *Accord City of Bothell v. Berkley Regional Specialty Ins. Co.*, No. C14-791RSL, 2014 U.S. Dist. LEXIS 145644, at *28 (W.D. Wash. Oct. 10, 2014). The court will not preclude revisiting this issue at the time when the parties can focus on IFCA, as opposed to their struggle to find a single forum for their dispute. For now, the court rules that Cedar Grove is a first-party claimant within the meaning of IFCA, at least as to its claim for an unreasonable denial of payment of its defense costs.

### III.  CONCLUSION

For the reasons stated above, the court DENIES Ironshore's motion to dismiss (Dkt. # 11), directs the clerk to TERMINATE Cedar Grove's motion for supplemental briefing (Dkt. # 27) because it is moot, and GRANTS Cedar Grove's motion invoking the first-to-file rule (Dkt. # 35). The parties shall comply with the court's orders as to Cedar Grove's amended complaint and a joint statement on the status of the New York action.

Dated this 2nd day of June, 2015.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Court Judge

ORDER – 11