HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CEDAR GROVE COMPOSTING, INCORPORATED,<br><br>  Plaintiff,<br><br>  v.<br><br>IRONSHORE SPECIALTY INSURANCE COMPANY,<br><br>  Defendant. | CASE NO. C14-1443RAJ<br><br>ORDER |

## I.  INTRODUCTION

This matter comes before the Court on two discovery motions (and one motion to seal[1] in connection) filed by Plaintiff Cedar Grove Composting, Incorporated ("Plaintiff") against Defendant Ironshore Specialty Insurance Company ("Defendant"). *See* Dkt. ## 45, 54, 57.  The Court also considers the Parties' Stipulated Motion to Extend Dates. Dkt. # 70.

---

[1] The Court has considered the documents filed under seal pursuant to Plaintiff's Motion to Seal in connection with this Order.  Those documents remain under seal at this time.  However, in keeping with this Court's procedures, the Parties are to meet and confer to consider whether redactions may render sealing unnecessary.  *See* Local Rules W.D. Wash. LCR 5(g)(1) (parties "must explore all alternatives to filing a document under seal," including meeting and conferring to determine whether redactions may resolve the issue).  The Parties are **HEREBY ORDERED** to meet and confer **within fourteen (14) days of this Order** to discuss alternatives to sealing. Plaintiff must file a written statement **not to exceed three (3) pages within seven (7) days** of that conference informing this Court of the proposed resolution.  In other words, that written statement should: (1) include the redacted versions of the sealed exhibits, (2) set forth concrete reasons for why the exhibits should remain sealed, or (3) explain that the exhibits no longer should be sealed.  The exhibits will remain sealed pending a final determination.

ORDER – 1

1   This discovery dispute has quickly transformed into a behemoth, replete with
2   competing and disputed descriptions of at the Parties' efforts to meet and confer. This is
3   not the cooperative discovery contemplated by the Federal Rules of Civil Procedure (the
4   "Rules") and this Court does not look kindly on the Parties' behavior, especially when
5   even a quick a review of the record reveals that many of the disputes have since been
6   resolved and would have been resolved even without judicial intervention.

## II. BACKGROUND

Plaintiff operates two organic waste composting facilities in Western Washington. It was named as a defendant four times in 2013 in suits claiming various injuries as a result of odors emanating from those facilities. *See* Dkt. # 42 (First Am. Compl.) ¶ 15. Cedar Grove turned to its insurer, Defendant Ironshore Specialty Insurance Company. *Id.* ¶¶ 16-17. It has not been happy with the results. In its complaint, it contends that Ironshore defended it only after reserving its right to deny coverage on an improper basis, that Ironshore forced it to expend hundreds of thousands of dollars to fund its own defense, and that Ironshore improperly interfered in the defense of the lawsuits. *See id.* ¶¶ 18-41.

## III. LEGAL STANDARD

The Court has broad discretion to control discovery. *Avila v. Willits Envtl. Remediation Trust*, 633 F.3d 828, 833 (9th Cir. 2011). That discretion is guided by several principles. Most importantly, the scope of discovery is broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). "Information within this scope of discovery need not be admissible in evidence to be discoverable." *Id.* The Court, however, must limit discovery where it is not "proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the

ORDER – 2

discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *Id.*

### IV.  DISCUSSION

a. <u>Plaintiff's Motion for Fees</u>

The Court begins with Plaintiff's Motion for Fees (Dkt. # 54) because it explains that many of the issues initially raised in the Motion to Compel (Dkt. # 45) have since been resolved. Plaintiff's primary basis for its Motion for Fees is that Defendant produced files at issue in the Motion to Compel after it was filed. *See* Dkt. # 54 at 2.

Under Rule 37(a)(5), if a "motion is granted--or if the disclosure or requested discovery is provided after the motion was filed--the court must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." However, "the court must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." *Id.*

The Court will **DENY** Plaintiff's Motion for Fees because it finds that Plaintiff did not attempt in good faith to obtain the requested discovery prior to filing its Motion to Compel.[2]

---

[2] The Court also notes that at least some of Defendant's objections to Plaintiff's requested discovery had merit. For example, in the Ninth Circuit, a privilege log must "identify '(a) the attorney and client involved, (b) the nature of the document, (c) all persons or entities shown on the document to have received or sent the document, (d) all persons or entities known to have been furnished the document or informed of its substance, and (e) the date the document was generated, prepared, or dated.'" *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 306 F.R.D. 234, 237 (N.D. Cal. 2015) (quoting *In re Grand Jury Investigation*, 974 F.2d 1068, 1071 (9th Cir. 1992)). Identifying privilege with sufficient specificity preferably will take the form of a document by document log, but such detail is not necessarily required, depending on the circumstances. *See In re Imperial Corp. of Am.*, 174 F.R.D. 475, 478 (S.D. Cal. 1997). In this case, the Court is not convinced that Defendant's June 5, 2015 privilege log was inherently defective (*see* Dkt. # 63-4 (Handler Decl.) Ex. D) and, in any event, any defects have since been remedied. The Court further notes that Defendant's concerns regarding proportionality have since been emphasized in

ORDER – 3

1   Prior to filing its Motion to Compel, Plaintiff was obligated to engage in a good
2   faith effort to obtain the requested discovery without resort to court action. *See* Fed. R.
3   Civ. P. 37(a)(1) (emphasis added); *see also* Local Rules W.D. Wash. LCR 37(a)(1).
4   Counsel must conduct themselves with "a high degree of professionalism and
5   collegiality" at any such conference. Local Rules W.D. Wash. LCR 1(c)(6). Regardless
6   of whose story is to be believed, Plaintiff's counsel's "effort" to confer with Defendant
7   could hardly be described as being a truly good faith attempt to resolve the issues.

8   Like *Rashomon* (Daiei Studios, 1950), depending on which party is telling the
9   story, the June 15, 2015 conference addressed every issue without issue (*see* Dkt. # 46
10  (Moore Decl.) ¶ 15), is not described at all (*see* Dkt. # 65 (Sheridan Decl.) ¶ 3 (stating
11  that Ms. Sheridan "was present on each of the telephonic meet and confer conferences"
12  but containing no description of any conference and simply claiming that Defendant's
13  timeline of the dispute is misleading)), or lasted no more than 10 minutes, consisted of
14  only two brief questions, and did not reach every issue (*see* Dkt. # 48 (Handler Decl.) ¶ 3;
15  Dkt. # 62 (Toren Decl.) ¶ 2; Dkt. # 63 (Handler Decl.) ¶¶ 9-10).

16  Plaintiff's counsel's silence in response to Defendant's counsel's characterization
17  of the June 15, 2015 "meet and confer" conference is telling. Despite Defendant's
18  counsel's unanimous and unflattering description of the telephone meeting (*see* Dkt. # 48
19  (Handler Decl.) ¶ 3; Dkt. # 62 (Toren Decl.) ¶ 2; Dkt. # 63 (Handler Decl.) ¶ 10) and
20  despite presenting the declarations of three separate attorneys (*see* Dkt. # 55 (Raskin
21  Decl.) ¶ 3; Dkt. # 56 (Moore Decl.) ¶ 3; Dkt. # 65 (Sheridan Decl.) ¶ 3) – ostensibly "to
22  ensure that there was no miscommunication about Ironshore's position" (Dkt. # 54 at 4
23  n.2) – Plaintiff's counsel does not dispute Defendant's counsel's account in any way.
24  That is unacceptable.

---

27  the revisions to the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26(b)(1) advisory
    committee's notes to 2015 amendment.
28  ORDER – 4

Instead, to support its Motion for Fees, Plaintiff relies on another "meet and confer" conference between the Parties, taking place on May 1, 2015 or various communications between the Parties in the interim. *See* Dkt. # 64 at 3-4. To highlight the "discourse" taking place on these issues, the Parties present competing "timelines" of the instant discovery dispute that do little more than muddy the waters and highlight the complete dysfunction in the Parties' relationship. *Compare* Dkt. #61 at 2-3 *with* Dkt. # 65-1 (Sheridan Decl.) Ex. A. The Court rejects Plaintiff's reliance on these communications to fill in the gaps in their June 15, 2015 "meet and confer." Simply because the Parties may have discussed some of the issues before does not mean that they can avoid a substantive discussion about those issues in a subsequent meet and confer. *See Johnson v. U.S. Bancorp*, No. C11-02010 RAJ, 2012 WL 6726523, at *2 n.5 (W.D. Wash. Dec. 27, 2012). Simply put, this Court believes that Plaintiff has given the meet and confer requirement short shrift. This is particularly highlighted by Plaintiff's complete failure to discuss the only remaining discovery issue, Ms. Ruettgers' documents and communications, in any of their telephonic meet and confers.[3] *See* Dkt. # 61 at 10.

The Court believes that had the Parties adequately met and conferred, then they could have resolved the vast majority of their discovery dispute without this Court's intervention. This belief is borne out by the Parties' resolution of several of the issues raised in the initial Motion to Compel without this Court's intervention. *See* Dkt. # 63-5 (Handler Decl.) Ex. E (June 18, 2015 email indicating willingness to amend discovery responses and privilege log and interest in continuing dialogue over its adequacy); Dkt. # 63-7 (Handler Decl.) Ex. G (Defendant's production of supplemental production of documents and third – and apparently inoffensive – privilege log in August 2015). In fact, the Court notes that Plaintiff received an amended privilege log – the subject of

---

[3] The only mention of Ms. Ruettgers in all of the correspondence is a single line buried in an email dated June 10, 2015. *See* Dkt. # 46-10 (Moore Decl.) Ex. J at 7 ("We also note the complete absence of documents sent to/from Ms. Laura Ruettgers, the outside attorney that Ironshore used for much of the claims handling that occurred in this case.").

ORDER – 5

much of Plaintiff's Motion to Compel – before the briefing on that motion had even completed.

The Court will take the opportunity to advise the Parties of the necessity of meaningfully cooperating in discovery.  What this means is actively meeting and conferring regarding discovery issues before bringing any concerns to the attention of the Court.  In order for the Parties to engage in meaningful, cost-effective discovery, they must cooperate in accordance with the spirit and purposes of the Rules.  *See Oracle USA, Inc. v. SAP AG*, 264 F.R.D. 541, 543-44 (N.D. Cal. 2009).  The Court strongly encourages the Parties to promptly meet their respective discovery obligations without resort to motion practice and advises them that "it would be wise for the parties to consider the letter and spirit of the Rules regarding discovery and engage in open, cooperative, meaningful and efficient discovery practices."  *Rivers v. Walt Disney Co.*, 980 F. Supp. 1358, 1360 n.3 (C.D. Cal. 1997).

It is the Court's sincere hope that cooler heads will prevail after such a meeting and any future filings will avoid the hyperbole set forth in some of the Parties' filings.  *See* Dkt. # 51 at 2 ("These claims are inaccurate at best"), 4 ("While this position borders on the unbelievable…"); Dkt. # 64 at 2 ("That claim is demonstrably false"), 4 n.2 ("This claim is completely meritless") (emphases in original).  Perhaps if the Parties truly attempted to cooperate – as this Court's Local Rules contemplate (*see* Local Rules W.D. Wash. Introduction ("the judges of this district are very concerned about professionalism among attorneys, especially in the conduct of discovery"); *cf. Quinstreet, Inc. v. Ferguson*, No. C08-5525RJB, 2008 WL 5102378, at *2 (W.D. Wash. Nov. 25, 2008) ("Parties are urged to exercise civility in their dealings with one another and use restraint in the manner in which they refer to one another in the pleadings.")) – then some of this dispute may have been avoided (*see* Dkt. # 61 at 7-9, Dkt. # 64 at 2-5 (arguing over the now-mythic meet and confer sessions between the parties)).

ORDER – 6

Nevertheless, if the Parties are truly unable to agree in the face of a future discovery dispute, the Court refers the Parties to the Court's expedited procedures set forth in Local Rule 37(b) as an alternative. Finally, the Court cautions that it will not abide any future discovery motions that fail to comply with this Court's rules. Plaintiff's Motion for Fees is **DENIED**.

b. Plaintiff's Motion to Compel

Based on this Court's review of the record, the only matters remaining for this Court's determination relate to documents created by or communications with an individual named Laura Ruettgers. As best as this Court can tell, Plaintiff's Motion relates to three of its discovery requests: its Interrogatory No. 2, and Requests for Production Nos. 2 and 9 to Defendant. *See* Dkt. # 46-6 (Moore Decl.) Ex. F.

i. *Procedural Requirements*

Before the Court proceeds to the merits of the instant discovery dispute, Defendant argues that several procedural irregularities in Plaintiff's Motion should cause it to be denied or stricken. *See* Dkt. # 47 at 4-5. Specifically, Defendant claims that the Motion lacks a certification that Plaintiff met and conferred with Defendant on these issues and violates this Court's formatting rules. For its part, Plaintiff admits its noncompliance with this Court's rules (*see* Dkt. # 51 at 2 n.1), but nevertheless argues that it adequately met and conferred with Defendant (*see* Dkt. # 51 at 2-3 (citing Dkt. # 46 (Moore Decl.) Exs. H-J). The Court has already explained that Plaintiff did not do so. Nevertheless, the Court will consider the only remaining issue because it believes doing so will further this case.

ii. *Work Product Doctrine and the Attorney-Client Privilege For Ms. Ruettgers' Documents*

Defendant claims that documents relating to Ms. Ruettgers are subject either to attorney work-product protection or the attorney-client privilege.

Defendant retained Ms. Ruettgers on January 30, 2013. *See* Dkt. # 50 (Ruettgers Decl.) ¶ 2. Defendant explains that it "retain[ed] Ms. Ruettgers as coverage counsel for

ORDER – 7

Ironshore to provide the company with legal advice as to its own potential liability, including an immediate second-look at Ironshore's Policy No. 001264600 (and its renewal policy), with the goal of avoiding litigation being filed by Cedar Grove against Ironshore." *See* Dkt. # 49 (Krigstin Decl.) ¶ 9. The reason for taking this step, Defendant's senior vice president Dawn Krigstin explains, is that she had been informed that Plaintiff had sued its predecessor insurer while the underwriting of the policies was still taking place. *See id.* ¶ 3. Plaintiff's attorney in that suit was Plaintiff's counsel here: Mr. Moore. *See id.*; Dkt. # 48 (Handler Decl.) Ex. A at 5-24. Ms. Krigstin explains that she sought Ms. Ruettgers's advice because Mr. Moore had requested that he be appointed as defense counsel for Plaintiff in the underlying lawsuits, which is unusual, and had negotiated the underwriting of the policy, which was unusual. *See id.* ¶¶ 4-6. Believing that Plaintiff (and Mr. Moore) was unusually litigious, Ms. Krigstin decided to retain outside counsel. *See id.* ¶¶ 6-11. Based on her interactions with Plaintiff and Mr. Moore, the "threat or implied threat of litigation" between Plaintiff and Defendant colored "the creation of every communication I prepared for Ironshore or obtained from Ironshore's outside counsel, but especially after Cedar Grove's first adversarial conference call with me on February 1, 2013." *Id.* ¶ 12.

Ms. Ruettgers states that her "role as Ironshore's retained counsel was not to handle, process, or evaluate the Underlying Actions which had been filed against Cedar Grove." *See* Dkt. # 50 (Ruettgers Decl.) ¶ 2. Instead, her immediate role "was to assist my client Ironshore by providing legal advice and counsel regarding its liability for insurance coverage or extra-contractual claims asserted or potentially asserted by Cedar Grove against Ironshore." *Id.* The potential for litigation, she asserts, "appeared to be a significant and potentially imminent possibility from the outset of [her] representation." *Id.* ¶ 4. From then on, Ms. Ruettgers provided Defendant with legal advice "with respect to its proposed application of the deductible amounts in relation to the reservation of rights defense that Ironshore had agreed to provide Cedar Grove." *Id.* ¶ 5. From April

ORDER – 8

2013 to September 2013, she provided advice "with respect to the legal rights and obligations of carriers with respect to choice of defense counsel." *Id.* After Defendant received Plaintiff's notice of intent to sue in September 2013, Ms. Ruettgers provided further legal advice "regarding the law and strategy relating to its potential liability for Cedar Grove's noticed assertions, as well as insurance coverage and any further extra-contractual claims potentially being asserted by Cedar Grove." *Id.* ¶ 7.

After Defendant received Plaintiff's notice of intent to sue letter, Ms. Ruettgers communicated with Plaintiff's counsel, Mr. Moore, regarding the allegations in the letter. *See id.* ¶ 7, Ex. B. She also, apparently, received Mr. Moore's unsolicited emails submitting third party vendors' invoices from February 2014 to April 2014 until she told Mr. Moore to send those invoices to Defendant directly. *See id.* ¶ 9; *see also* Dkt. # 46 (Moore Decl.) Exs. C, D. Ms. Ruettgers provided counsel regarding the timing of Defendant's payments during this time – a task it seems she continued through September 2014. *See id.*; Dkt. # 46-7 (Moore Decl.) Ex. G. From May 2014 to August 2014, Ms. Ruettgers provided counsel regarding "the apparent exhaustion of its primary policy . . . and the transition to Ironshore's excess policy." *Id.* ¶ 10. Finally, Ms. Ruettgers explains that after this case was filed, she provided advice regarding Defendant's "potential liability for insurance coverage and for extra-contractual claims." *Id.* ¶ 11.

Ms. Ruettgers explicitly disclaims (1) examining any witnesses or communicating with Plaintiff's defense counsel or its consultants and experts in the underlying lawsuits; (2) adjusting the value of Plaintiff's defense costs or issuing payments for defense costs; and (3) evaluating or processing the underlying actions filed against Plaintiff. *Id.* ¶ 12; *see also id.* ¶ 4 ("the scope of my representation did not include making, and I did not make, the substantive decisions on whether or not to provide Cedar Grove with a defense in the Underlying Actions pursuant to Ironshore's reservation of rights to deny coverage").

ORDER – 9

1  Ms. Krigstin confirms Ms. Ruettgers' role, stating that from the moment Plaintiff
2  submitted its claim to Defendant in January 2013, only its claims representatives
3  "investigated, evaluated and processed payments . . . relating to Cedar Grove's claims."
4  *See* Dkt. # 49 (Krigstin Decl.) ¶ 13.  Those claims representatives were Tamara Ashjian,
5  Ms. Krigstin, "Mr. Thomas A. Zawistowski, AIC, and Ms. Michelle Duluc."  *Id.*  Indeed,
6  Defendant "has not instructed Cedar Grove or its counsel to contact its coverage counsel
7  Ms. Ruettgers instead of its claims representatives."  *Id.*

Federal jurisdiction in this case is based on diversity.  *See* First Am. Compl. ¶ 5.
As such, "Washington law applies to claims of attorney-client privilege, while federal
law governs assertions of work-product protection."  *See Schreib v. Am. Family Mut. Ins.
Co.*, 304 F.R.D. 282, 285 (W.D. Wash. 2014) (citing *Lexington Ins. Co. v. Swanson*, 240
F.R.D. 662, 666 (W.D. Wash. 2007)); *see also* Fed. R. Evid. 501.  "A party withholding
materials under an assertion of privilege has the burden of proving that the withheld
materials are actually privileged."  *Aecon Bldgs., Inc. v. Zurich N. Am.*, 253 F.R.D. 655,
659-660 (W.D. Wash. 2008) (citing *Heath v. F/V Zolotoi*, 221 F.R.D. 545, 549 (W.D.
Wash. 2004)).

"The work product doctrine, codified in Federal Rule of Civil Procedure 26(b)(3),
protects 'from discovery documents and tangible things prepared by a party or his
representative in anticipation of litigation.'"  *In re Grand Jury Subpoena (Mark Torf/Torf
Envtl. Mgmt.)*, 357 F.3d 900, 906 (9th Cir. 2003) (quoting *Admiral Ins. Co. v. United
States Dist. Court*, 881 F.2d 1486, 1494 (9th Cir. 1989)).  "However, the work product
doctrine creates only qualified protection of such materials: a party may only obtain
discovery of these items upon a showing that they are relevant and there is a substantial
need for the materials to prepare its case and the inability to obtain the materials or their
substantial equivalent by other means."  *Schoenmann v. Fed. Deposit Ins. Corp.*, 7 F.
Supp. 3d 1009, 1013 (N.D. Cal. 2014) (citing Fed. R. Civ. P. 26(b)(3)(A)(i), (ii)).

ORDER – 10

Generally speaking, in order to qualify for the protection, "documents must: (1) be 'prepared in anticipation of litigation or for trial' and (2) be prepared 'by or for another party or by or for that other party's representative.'" *United States v. Richey*, 632 F.3d 559, 567 (9th Cir. 2011) (quoting *In re Grand Jury Subpoena*, 357 F.3d at 907). "[W]here a document serves a dual purpose, that is, where it was not prepared exclusively for litigation, then the 'because of' test is used." *Id.* Such documents "are deemed prepared because of litigation if 'in light of the nature of the document and the factual situation in the particular case, the document can be fairly said to have been prepared or obtained because of the prospect of litigation.'" *Id.* (quoting *In re Grand Jury Subpoena*, 357 F.3d at 907). Courts must examine the totality of the circumstances in determining "whether whether the 'document was created because of anticipated litigation, and would not have been created in substantially similar form but for the prospect of litigation.'" *Id.* (quoting *In re Grand Jury Subpoena*, 357 F.3d at 908).

Based on the Court's review of the record, it seems clear that Defendant was motivated to hire Ms. Ruettgers due to what it believed to be unusual circumstances surrounding the claim for coverage. In her capacity, Ms. Ruettgers prepared all documents with an eye toward litigation that seemed likely, if not inevitable, even at early stages of the relationship. All of the documents she describes "can be fairly said to have been prepared or obtained because of the prospect of litigation." *See Richey*, 632 F.3d at 567. Many of the communications between Ms. Ruettgers and Defendant highlight this. For example, one email at the very beginning of Ms. Ruettgers' retention bears the subject line "RE: Cedar Grove: MTD outline." *See* Dkt. # 63-7 (Handler Decl.) Ex. G at 5. Strategy for a motion to dismiss plainly anticipates litigation and clearly was prepared by Ms. Ruettgers for Defendant. That is subject to work product protection.

Plaintiff does not attempt to rebut Defendant's evidence of Ms. Ruettgers's role. Instead, in concluding that the documents Ms. Ruettgers prepared are necessarily the "written claims file documenting [Defendant's] actions" (or that those files are being

ORDER – 11

1    improperly withheld based on privilege), Plaintiff focuses on what Ms. Ruettgers does
2    not explicitly disclaim, contends that "[t]hose documents simply *must* exist," and asserts
3    that Defendant has not yet produced such documents.[4] *See* Dkt. 51 at 6. None of this
4    goes toward actually rebutting Ms. Ruettgers' role. And Defendant has shown that many
5    of the documents she prepared were actively with an eye toward imminent litigation.

6    Additionally, to the extent that Plaintiff argues that an imminent threat of litigation
7    could not occur until the instant case was filed (*see* Dkt. # 51 at 4), that argument is
8    incorrect. Documents created prior to the filing of the case – or, more pertinent to this
9    case, the filing of the notice of intent to sue letter – clearly may be protected in certain
10   circumstances. *See Kifer v. Am. Fam. Mut. Ins. Co.*, No. 13-6085 RJB, 2015 WL
11   2085618, at *3 (W.D. Wash. May 5, 2015). And Defendant persuasively shows that in
12   July 2011, long before Plaintiff first submitted its claims to Defendant, Plaintiff had
13   already initiated litigation against a similar insurer for complaints regarding the odors
14   emanating from its plant, meaning that Defendant had real reasons to believe litigation
15   could and would occur. *See* Dkt. # 48 (Handler Decl.) Ex. A. That, coupled with what
16   Ms. Krigstin believed to be unusual and adversarial requests, raised more than a mere
17   specter of impending litigation. "Litigation need not be a certainty for work product
18   protection to arise." *See Bickler v. Senior Lifestyle Corp.*, 266 F.R.D. 379, 383 (D. Ariz.
19   2010); *see also Arfa v. Zionist Org. of Am.,* No. CV 13-2942 ABC SS, 2014 WL 815496,
20   at *4 (C.D. Cal. Mar. 3, 2014) (requiring "an identifiable prospect of litigation or specific
21   claims have already arisen" for the rule to apply); *Phillips v. C.R. Bard, Inc.*, 290 F.R.D.
22   615, 635 (D. Nev. 2013). Here, while litigation may not have been a certainty at the time

---

[4] In addressing this argument, the Court is tempted to simply invoke Occam's razor – "that in explaining anything, no more assumptions should be made than necessary." *See Am. Civil Liberties Union v. Clapper*, 804 F.3d 624 n.2 (2d Cir. 2015) (quoting Oxford English Dictionary (3d ed. 2004)). Perhaps it is too much of an assumption to think that Defendant seriously trying to mislead both Plaintiff and the Court by simply waving its hand and stating that "these aren't the droids you're looking for." *Star Wars: Episode IV – A New Hope* (Lucasfilm 1977). A simpler explanation is that many of those documents do exist – and Plaintiff has received them (and would have received them) without this Court's intervention. *See* Dkt. # 54 at 6.

28   ORDER – 12

the relationship began, there was a fair prospect of such litigation, particularly as Plaintiff had already brought suit against its predecessor insurer regarding similar issues. *See generally* Dkt. # 48 (Handler Decl.) Ex. A.

Finally, the Court finds that Plaintiff has not presented a substantial need for the documents prepared by Ms. Ruettgers or that it cannot obtain its substantial equivalent by other means. *See In re Grand Jury Subpoena*, 357 F.3d at 906. For one, Plaintiff cannot demonstrate that it has substantial need to examine these documents because they are "claims handling documents" because the evidence Defendant has put forth strongly suggests that Ms. Ruettgers' files are not such ordinary "claims handling documents." *See* Dkt. # 51 at 5. Second, even assuming they were, it is unclear whether the claims handling documents Plaintiff has since received constitute such a substantial equivalent.

The Court further finds that Ms. Ruettgers' communications with Defendant are also likely covered by Washington's[5] attorney-client privilege. "The attorney-client privilege protects confidential communications between attorneys and clients." *Aecon Bldgs.*, 253 F.R.D. at 660. Based on a review of the most recent privilege log, many, if not all, of the entries involving Ms. Ruettgers qualify. *See* Dkt. # 63-7 (Handler Decl.) Ex. G. But the inquiry does not end there. Under Washington law, "in first-party bad faith insurance suits, *Cedell* creates a 'presumption that there is no attorney-client privilege relevant between the insured and the insurer in the claims adjusting process, and that the attorney-client and work product privileges are generally not relevant.'" *MKB Constructors v. Am. Zurich Ins. Co.*, No. C13-0611JLR, 2014 WL 2526901, at *4 (W.D. Wash. May 27, 2014) (quoting *Cedell v. Farmers Ins. Co. of Wash.*, 295 P.3d 239, 246-47 (Wash. 2013)). However, "an insurer may overcome the presumption that the privilege is inapplicable if it can show that its attorney was not involved in 'investigating, and evaluating, or processing the claims.'" *See Everest Indem. Ins. Co. v. QBE Ins.*

---

[5] Because the Court finds that Ms. Ruettgers' communications with Defendant pass muster under Washington law, it declines to address whether another state has a more "significant relationship" to those communications.

ORDER – 13

*Corp.*, 980 F. Supp. 2d 1273, 1279 (W.D. Wash. 2013) (quoting *Cedell*, 295 P.3d at 246). This may be done by presenting "evidence that the attorney was instead 'providing the insurer with counsel as to its own liability.'" *Id.* In federal court, this may be done by affidavit, rather than through the procedural *in camera* review process. *See Indus. Sys. & Fabrication, Inc. v. W. Nat. Assur. Co.,* No. 2:14-CV-46-RMP, 2014 WL 5500381, at *2 (E.D. Wash. Oct. 30, 2014).

Both Ms. Ruettgers and Defendant's representative explicitly disclaim many, if not all, of the "quasi-fiduciary" tasks of the insurer. For example, Ms. Ruettgers disclaims doing anything to "handle, process, or evaluate the Underlying Actions which ahd been filed against Cedar Grove." *See* Dkt. # 50 (Ruettgers Decl.) ¶ 2. She "did not adjust the value of Cedar Grove's defense cost claims or issue payments for defense costs, and accordingly, [she] did not evaluate or process the Underlying Actions filed against cedar Grove." *Id.* ¶ 12. Ms. Ruettgers also disclaims "examin[ing] any witnesses under oath or communicat[ing] with defense counsel or its consultants or experts, such as the third party vendors used by defense counsel in the underlying lawsuits against Cedar Grove." *Id*. In other words, Ms. Ruettgers has disclaimed precisely the "quasi-fiduciary tasks of investigating and evaluating or processing the claim" addressed in *Cedell*. 295 P.3d at 246.

Plaintiff has not presented any evidence to show that Ms. Ruettgers has actually engaged in such tasks, mostly relying on conjecture to claim that Ms. Ruettgers must have been involved in the acts allegedly constituting bad faith in this action. *See* Dkt. # 51 at 6 n.8. This is not enough. Defendant has adequately shown that the communications sought to be protected are subject to the attorney-client privilege.

Accordingly, the Court will **DENY** Plaintiff's Motion to Compel. Dkt. # 45.

### V. STIPULATED MOTION TO EXTEND

Finally, the Court has reviewed the Parties' stipulation. *See* Dkt. # 70. Having reviewed the stipulation, the Court does not believe that any extension of time is

ORDER – 14

necessary.  The Court is optimistic that the Parties can adequately complete their preparations within the current schedule.  The Parties have at least two months to exchange their initial expert witness reports, over four months to complete discovery, and over five months to prepare dispositive motions.  *See* Dkt. # 69.  Additionally, the Parties have nearly eight months to prepare for trial.  *Id.*  The Court finds no good cause to extend those dates at this time.

## VI.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's Motion to Compel (Dkt. # 45) and **DENIES** Plaintiff's Motion for Fees (Dkt. # 54).  Additionally, the Court **DENIES** the Second Stipulated Motion to Extend Trial Date and Related Dates.  All dates remain as set.  Dkt. # 70.

Finally, Plaintiff's Motion to Seal (Dkt. # 57) remains pending.  As set forth above in footnote 1 of this Order, the Parties are to meet and confer **within fourteen (14) days** of this Order to discuss whether alternatives to sealing – such as redactions – may resolve confidentiality concerns.  Plaintiff is to file a **written statement not to exceed three (3) pages within seven (7) days** of that conference addressing those issues.

Dated this 23rd day of December, 2015.

The Honorable Richard A. Jones
United States District Court

ORDER – 15